# Exhibit A

**SUMMONS**

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                           FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| ALLAN MOONEY, <br><br> Plaintiff, <br><br> v. <br><br> FRITO-LAY, INC. and PEPSICO, INC., <br><br> Defendants. | Court File No.: _____ <br><br> Case Type:   14. (Other Civil – <br> Consumer Protection) <br><br><br> **SUMMONS** |

THIS SUMMONS IS DIRECTED TO <u>FRITO-LAY, INC.</u>

    **1. YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    **2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    Paul R. Hansmeier (MN Bar #387795)
    CLASS ACTION JUSTICE INSTITUTE, LLC
    40 South 7th Street
    Suite 212-313
    Minneapolis, MN 55402

    **3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

_____       2/20/13
_____
Plaintiff's attorney's signature              Dated

Paul R. Hansmeier (MN Bar #387795)

CLASS ACTION JUSTICE INSTITUTE, LLC
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*Attorney for Plaintiff*

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

|  |  |  |
|---|---|---|
| ALLAN MOONEY, | ) ) ) ) | |
| Plaintiff, | ) ) | Court File No.: _____ |
| v. | ) ) ) | Case Type:  14. (Other Civil – Consumer Protection) |
| FRITO-LAY, INC. and PEPSICO, INC., | ) ) | |
| Defendants. | ) ) ) ) ) | **COMPLAINT** **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Allan Mooney, on behalf of himself and in the public interest of the citizens of Minnesota, by and through his attorneys, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, complains and alleges as follows:

## INTRODUCTION

1.     Plaintiff alleges that from approximately January 1, 2010 through the present, Defendants Frito-Lay, Inc. ("Frito-Lay") and PepsiCo, Inc. ("PepsiCo") deceptively and misleadingly marketed certain food products as "all natural" when, in fact, those products contained unnatural, genetically-modified organisms ("GMOs").

2.     Representations that food products are "all natural" are material to consumers, as Defendants have expressly acknowledged. As John Compton, CEO of PepsiCo Americas Foods, told an industry conference in 2010: "We have talked extensively to consumers about this idea,

and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

   3.  The deceptively and misleadingly marketed products include SunChips 6 Grain Medley Parmesan & Herb Flavored Multigrain Snacks, SunChips 6 Grain Medley Creamy Roasted Garlic Flavored Multigrain Snacks, SunChips Original Flavored Multigrain Snacks, SunChips Harvest Cheddar Flavored Multigrain Snacks, SunChips French Onion Flavored Multigrain Snacks, SunChips Garden Salsa Flavored Multigrain Snacks (collectively referred to herein as "SunChips"); and Tostitos Restaurant Style Tortilla Chips, Tostitos Bite Size Rounds Tortilla Chips, Tostitos Crispy Rounds Tortilla Chips, Tostitos Multigrain Tortilla Chips, Tostitos Scoops Tortilla Chips, Tostitos Multigrain Scoops Tortilla Chips, Tostitos Restaurant Style with a Hint of Lime Flavored Tortilla Chips, Tostitos Restaurant Style with a Hint of Jalapeno Flavored Tortilla Chips, Tostitos Restaurant Style with a Hint of Pepper Jack Flavored Tortilla Chips, Tostitos Artisan Recipes Fire-Roasted Chipotle Flavored Tortilla Chips, Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips, Tostitos Artisan Recipes Roasted Garlic and Black Bean Flavored Tortilla Chips, Tostitos Artisan Recipes Toasted Southwestern Spices Flavored Tortilla Chips (collectively referred to herein as "Tostitos"). SunChips and Tostitos are collectively referred to herein as the "Products."

   4.  Throughout the relevant time period, Defendants have systematically marketed and advertised the Products as "all natural" on each package of SunChips and Tostitos; on the Frito-Lay website; and in print and television advertisements such that any United States consumer, including Plaintiff, who purchased, or today or in the future purchases the Products is exposed to Defendants' "all natural" claim.

5.     This claim is deceptive and misleading because the Products are not "all natural." Specifically, the Products contain ingredients made from GMOs.

6.     GMOs are organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally, allowing the organism to exhibit traits that would not appear in nature. "For example, by transferring specific genetic material from a bacterium to a plant, scientists can create plants that produce pesticidal proteins or other chemicals that the plant could not previously produce. Using this technology, scientists have modified corn, cotton, and potatoes to produce a pesticidal protein that is toxic when ingested by specific insect pests." EPA's Regulation of Biotechnology for Use in Pest Management, January 2012, *available at* http://www.epa.gov/oppbppd1/biopesticides/reg_of_biotech/eparegofbiotech.htm.

7.     Accordingly, Defendants mislead and deceive reasonable consumers, including Plaintiff, by portraying Products containing non-natural, genetically-modified ingredients as "all natural."

8.     As a result of this false and misleading labeling, Defendants were able to sell these purportedly "all natural" food products to thousands of unsuspecting consumers, including Plaintiff, in Minnesota and throughout the United States and to profit handsomely from these transactions.

9.     Defendants' conduct harms consumers, including Plaintiff, by inducing them to purchase and consume the Products containing GMOs on the false premise that the products are "all natural," and by inducing consumers to pay a premium price for the Products.

10.    Plaintiff is entitled to relief. Defendants' conduct gives rise to common-law fraud, violates the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.* (the "MCFA"), and violates the Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67

- 3 -

(the "MFSAA"). Defendants' conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

11.    Plaintiff also seeks declaratory and injunctive relief based upon Defendants' conduct asserted in this Complaint. As of the date of this Complaint, retail stores in Minnesota and throughout the United States are selling SunChips and Tostitos food products labeled as "all natural," even though they contain GMO ingredients. Moreover, even if Defendants elect to remove the "all natural" representation from the Products' labels or to discontinue the offending Products, Defendants are not presently enjoined from putting the "all natural" representations back on their labels at any time it so decides, or reintroducing the offending Products, even if its food products still contain GMO ingredients. Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure Defendants remove any and all of the false "all natural" representations from labels on its Products available for purchase, and to prevent Defendants from making the "all natural" representations on its labels in the future as long as the Products continue to use GMO ingredients.

## JURISDICTION AND VENUE

12.    This action is brought pursuant to Minnesota common law and the Minnesota private attorney general statute, Minn. Stat. § 8.31 Subd. 3a. This Court has original jurisdiction over this dispute pursuant to Minn. Stat. § 484.01 Subd.1.

13.    Hennepin County, Minnesota is the appropriate jurisdiction and venue because Plaintiff is located in Hennepin County, Minnesota; because a substantial portion of the events giving rise to Plaintiff's claims occurred in Hennepin County, Minnesota; and because Defendants advertised to, made available to, and directed their food products at citizens of Hennepin County, Minnesota, with the successful intent of soliciting business from citizens of and within Hennepin County, Minnesota.

- 4 -

14.     As set forth above, under the Due Process Clause of the United States

Constitution, Hennepin County, Minnesota is the proper jurisdiction and venue for the resolution

of this dispute. Defendants have sufficient contacts with the State of Minnesota that the exercise

of jurisdiction over them by this Court is proper and does not offend any traditional notions of

fair play or substantial justice.

## PARTIES

### A.     Plaintiff

15.     Plaintiff Allan Mooney is a consumer residing in Hennepin County, Minnesota.

Plaintiff Mooney purchased SunChips 6 Grain Medley Parmesan & Herb Flavored Multigrain

Snacks for his personal consumption at the Byerly's grocery store in Chanhassen, Minnesota on

February 3, 2013. Plaintiff Mooney also purchased a variety of the Frito-Lay snack food

Products specified in this Complaint approximately per month in 2010, 2011, and 2012 at

various grocery and convenience stores located in Hennepin County, Minnesota. During that

period, the Products contained the representations on their packages and in related advertising

that they were "all natural." Mooney was exposed to Defendants' claims that the Products were

"all natural" through Defendants' product packaging, to which he was exposed approximately

once per month in stores and more frequently in his home. Mooney believed Defendants'

representations that the Products he purchased were "all natural." He reasonably relied on those

representations in making his purchase decisions and would not have purchased the Products had

he known that they were not all natural because they contained GMOs. Mooney paid for "all

natural" products, but he received products that were not all natural; specifically, he received

products made from corn that was genetically manipulated in a laboratory to exhibit traits that

corn does not possess in nature. The products Mooney received were worth less than the

products for which he paid. Mooney was injured in fact and lost money as a result of Defendants' improper conduct.

**B.      Defendants**

16.      Defendant PepsiCo, Inc. ("PepsiCo") is a Delaware corporation with headquarters in Purchase, NY. PepsiCo is the parent company of Frito-Lay, which it holds as a wholly-owned subsidiary. PepsiCo markets, advertises and distributes the Products.

17.      PepsiCo is a world leader in convenient snacks, foods, and beverages, with net revenues of over $60 billion and over 285,000 employees. PepsiCo owns some of the world's most popular brands, including Pepsi-Cola, Mountain Dew, Diet Pepsi, Lay's, Doritos, Tropicana, Gatorade, and Quaker. Its brands are available worldwide through numerous distribution channels including stores, restaurants, food service facilities and vending operations. *See* PepsiCo's Corporate Profile, *available at* http://www.pepsico.com/Investors/Corporate-Profile.html; PepsiCo's Annual Report on Form 10-K, filed Feb. 27, 2012, *available at* http://www.sec.gov/Archives/edgar/data/77476/000119312512081822/d269581d10k.htm.

18.      PepsiCo operates and manages facilities and/or warehouses in Minnesota. According to current public listings on YellowPages.com, PepsiCo has at least three physical locations in Minnesota. http://www.yellowpages.com/mn/pepsico. PepsiCo's corporate careers website page currently lists four job openings at a Burnsville, MN location.

19.      Defendant Frito-Lay, Inc. ("Frito-Lay"), a Delaware corporation with headquarters in Plano, TX, is a wholly-owned subsidiary of PepsiCo. Frito-Lay manufactures, markets, advertises, distributes and sells the Products.

20.      Frito-Lay claims that its products are in 93% of American households and that its brands account for 65% of the U.S. snack chip industry. *See* Frito-Lay Job Postings, http://miamidade.jobing.com/jobfair_company.asp?i=32798 (last visited Feb. 20, 2013). Frito-

- 6 -

Lay's net revenues were $13.3 billion, $12.6 billion and $12.4 billion in 2011, 2010 and 2009, respectively. *See* PepsiCo's Annual Report on Form 10-K, filed Feb. 27, 2012, *available at* http://www.sec.gov/Archives/edgar/data/77476/000119312512081822/d269581d10k.htm. Frito-Lay's operating profit was $3.6 billion, $3.3 billion and $3.1 billion in 2011, 2010 and 2009, respectively. *See id.* Frito-Lay has more than 38,000 employees. *See id.* Frito-Lay owns or leases approximately 40 food manufacturing and processing plants and approximately 1,720 warehouses, distribution centers and offices in the U.S.

21.     Frito-Lay operates and manages facilities and/or warehouses in Minnesota. According to current public listings on YellowPages.com, Frito-Lay has 18 physical locations in Minnesota. *See* http://www.yellowpages.com/minnesota/frito-lay.

**C.     Both PepsiCo and Frito-Lay Actively Engage in the Advertising and Marketing of the Products as "All Natural" and Profit Therefrom.**

22.     The marketing, advertising and distribution functions of PepsiCo and Frito-Lay are substantially intertwined. More specifically, Defendant PepsiCo actively coordinates its marketing and advertising activities with Defendant Frito-Lay to promote the Products as "all natural," and benefits therefrom.

23.     In September 2011, PepsiCo announced the formation of an integrated marketing campaign titled: "Power of One – Americas Council," to bring together its top food and beverage leaders to "leverage the combined scale of the company's complementary snack and beverage businesses across North, South and Central America." *See* http://www.pepsico.com/PressRelease/PepsiCo-Announces-Formation-of-Power-of-One---Americas-Council-and-Creation-of-G09202011.html (last visited Feb. 20, 2013).

24.     PepsiCo also announced the creation of the "Global Snacks Group," designed to "drive breakthrough innovation across [PepsiCo's] leading portfolio of global snack food

brands," including Frito-Lay. The Global Snacks Group focuses on "developing a coordinated approach to [PepsiCo's] global brand portfolio, creating and delivering breakthrough snacks innovation and promoting best practice-sharing around the world." *See* http://www.pepsico.com/PressRelease/PepsiCo-Announces-Formation-of-Power-of-One---Americas-Council-and-Creation-of-G09202011.html (last visited Feb. 20, 2013).

25.     Both integrated marketing initiatives are led by John Compton, CEO of PepsiCo Americas Foods, who described the initiatives as "critical components of [PepsiCo's] long-term strategy to strengthen and extend [PepsiCo's] combined food and beverage businesses." PepsiCo described the level of integration between itself and its snack businesses, including Frito-Lay, that is required under the "Power of One" marketing strategy:

> The Power of One – Americas Council will ensure full coordination across the food and beverage operating systems, while also unlocking opportunities to create value across the business—from sales, marketing and distribution to back-office operations. The new group will also focus on creating opportunities in complementary food and beverage products in ways that are attractive to retailers and consumers.

*See* http://www.pepsico.com/PressRelease/PepsiCo-Announces-Formation-of-Power-of-One---Americas-Council-and-Creation-of-G09202011.html (last visited Feb. 20, 2013).

26.     The following press release, dated December 28, 2010, appears on the PepsiCo website:

Frito-Lay Launches Products Made With All Natural Ingredients

*Approximately Fifty Percent of the Product Portfolio to be Made With All Natural Ingredients*
December 28, 2010
/PRNewswire/

PLANO, Texas - PepsiCo's Frito-Lay North America division today said that approximately 50 percent of its product portfolio will be made with all natural ingredients, including three of its biggest brands, Lay's® potato chips, Tostitos® tortilla chips and

SunChips® multigrain snacks. The products made with all natural ingredients do not have any artificial or synthetic ingredients, and they do not contain any artificial flavors or artificial preservatives, or ingredients such as monosodium glutamate (MSG), yet still have the great taste consumers expect from Frito-Lay.

More than six dozen varieties of Frito-Lay products will be made with all natural ingredients including all the flavors of Lay's® potato chips, Tostitos® tortilla chips, SunChips® multigrain snacks, Baked! snacks, and Rold Gold® pretzels by the end of 2011.

"*As the snack food category leader, we have insights that show consumers are seeking a wider range of products made with all natural ingredients.* At Frito-Lay North America we want to provide our customers with a broad portfolio of snack options that taste great and are made with real food ingredients," said Ann Mukherjee, senior vice president and chief marketing officer, Frito-Lay. "Many of the unflavored snacks in our portfolio are already made with all natural ingredients, and we've focused on expanding our portfolio of products with all natural ingredients to include more of consumers' favorite flavored products."

Frito-Lay's seasoning professionals and chefs at the Frito-Lay Flavor Kitchen™ turn culinary inspiration into great tasting snacks like Lay's regionally-inspired flavors, such as Tangy Carolina BBQ and Garden Tomato & Basil. The Frito-Lay seasoning professionals created the new seasonings for the products made with all natural ingredients.

New products made with all natural ingredients are now becoming available at retailers nationwide with more products launching throughout 2011. The reformulated products will be easily identifiable in stores with a stamp on package that calls out that the product is made with all natural ingredients, with no MSG, artificial preservatives or artificial flavors.

To support the transformation, Frito-Lay is undertaking the largest integrated marketing campaign in the history of the company. The portfolio-focused, 360 degree marketing campaign launches January 1 during the Tostitos Fiesta Bowl and includes a significant focus on digital and social mediums to connect with consumers.

Highlights of the campaign include:

• Television Advertising: National campaign launching January 1st during the Tostitos Fiesta Bowl and appearing on a range of network and cable channels will focus on the real employees behind the products made with natural ingredients, from the purchasing agents who buy ingredients, to culinary center chefs who inspire new products to quality experts that ensure products meet Frito-Lay's high standards.

• Print Advertising: National campaign highlighting the real food ingredients and culinary-based innovation process that are used to make Frito-Lay's products, appearing in a variety of national print outlets. The print campaign will include Quick Response (QR) codes that leverage scan technology to unlock additional content, including recipes and culinary webisodes.

• In-Store Promotions: In-store communications including redesigned packaging, partnering with top-tier retailers and media for cooperative advertising.

Frito-Lay is making an investment in emerging technology and marketing practices to support the program; embracing digital media in a way they never have before and utilizing the scale of mass media to drive digital and social engagement. And in 2011, Frito-Lay will use advertising and marketing to drive consumers to Facebook. Most of the advertisements - and for the first time ever, packaging - will list branded Facebook pages. Frito-Lay will claim the broadest portfolio of consumer products that include a Facebook URL on packaging to date.

"Throughout the campaign, Frito-Lay is highlighting our 'seed to shelf' story, which shows the care and pride that goes into every step to make our products, from the real ingredients that we use, to the real culinary arts and quality employee experts," said Mukherjee. "We are pulling back the curtain and inviting consumers to learn how our products are created, from our kitchen into theirs."

http://www.pepsico.com/PressRelease/Frito-Lay-Launches-Products-Made-With-All-Natural-Ingredients12282010.html (last visited Feb. 20, 2013) (emphasis added).

27.     John Compton, CEO of PepsiCo Americas Foods, made the following comments at an industry conference in 2010, further revealing the degree to which the businesses of PepsiCo and Frito-Lay are intertwined:

Let me first start with this decision to the Frito-Lay [move] to all natural. ***Consumers have consistently told us they are looking for more whole grains, and more all natural snacks. And they are voting with their wallets.*** If you look at the total food and beverage growth in the United States, it's growing around 2% to 3%. And the all-natural segment is growing almost 3 times faster than the total.

[...]

So in 2011, we're going to take that learning from 2010 and we're going to expand this all-natural platform to include all of Tostitos, all of SunChips, all of Rold Gold, in an entire baked line. We will also add Fritos in the back half of the year. We will have over 50% of our portfolio converted and simultaneously reducing sodium levels 15% to 25%.

Now, you may ask, what does it mean to be all natural? Well, it means just that -- no artificial colors, no preservatives, no artificial flavors, ***and made with all-natural ingredients.*** In addition, we will be the largest gluten-free portfolio in North America.

Now we hope this is transformational to the business. And this is a picture that we commonly refer to as the snack-food aisle, but it's true that some people refer to it as the junk food aisle. ***And what we're trying to do is to change that perception.***

Half of our gondola, and if you were outside of the Northeast and you were in Dallas or Des Moines, Iowa, or in California, you would know that we command somewhere between 50 and 60 feet of space [in supermarket snack aisles]. ***At least half of that space now will be blocked in an all-natural look and feel.***

***And, due to our DSD system, we will take that all-natural look to every piece of that permanent equipment that you see around the stores, and all of our temporary displays will showcase and romance the all-natural look.***

[...]

***We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural.*** And the purchase intent went up for heavy users, medium users, and importantly, light users who tend to come and go from the category.

Final Transcript, Thomson StreetEvents: PEP – PepsiCo at Morgan Stanley Consumer & Retail Conference, Nov. 17, 2010, *available at* http://www.pepsico.com/Download/PEP-Transcript-2010-11-17.pdf (emphasis added)

28.     In 2009, 2010 and 2011, PepsiCo's annual shareholder meeting was held at Frito-Lay headquarters in Plano, TX.

29.     According to PepsiCo's 2011 Annual Report, Thomas R. Greco is both Executive Vice President of PepsiCo and President of Frito-Lay.

30.     Frito-Lay shares marketing, accounting, warehousing and other business functions with the Quaker Oats, Tropicana and Gatorade divisions of PepsiCo.

## FACTUAL ALLEGATIONS

**A.     Defendants Advertise and Market SunChips and Tostitos as "All Natural"**

31.     At all relevant times, Defendants systematically marketed and advertised the Products as "all natural" in product packaging, print advertisements (e.g., coupons or magazine advertisements), both visually and audibly in television commericials, and on the Frito-Lay and SunChips websites.

32.     Defendants stamp every bag of SunChips and Tostitos with a large, bulls-eye like pattern with the phrase "all natural" in bold, prominent font on the front of the package as illustrated in the representative images of SunChips and Tostitos packaging reproduced below:

The Frito-Lay "All Natural" Bulls-eye Stamp:

Packaging for "All Natural" SunChips 6 Grain Medley Parmesan & Herb Multigrain Snacks:

**Ingredients:** Whole Corn, Sunflower and/or Canola Oil, Whole Wheat, Whole Oat Flour, Parmesan & Herb Seasoning (Maltodextrin [Made From Corn], Salt, Buttermilk, Whey, Sugar, Garlic Powder, Onion Powder, Tomato Powder, Cheddar Cheese [Milk, Cheese Cultures, Salt, Enzymes], Cream, Spices [Including Basil], Skim Milk, Whey Protein Concentrate, Natural Flavor, Parmesan Cheese [Milk, Cheese Cultures, Salt, Enzymes], Gum Acacia), Whole Brown Rice Flour, Whole Buckwheat Flour, Whole Quinoa Flour, and Sugar. **CONTAINS WHEAT AND MILK INGREDIENTS.**

**Nutrition Facts**

Serving Size 1 oz (28g/About 15 chips)

| | |
|---|---|
| **Amount Per Serving** | |
| **Calories** 140 | Calories from Fat 60 |
| | **% Daily Value*** |
| **Total Fat** 6g | **10%** |
| Saturated Fat 0.5g | **3%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 1g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 140mg | **6%** |
| **Total Carbohydrate** 19g | **6%** |
| Dietary Fiber 3g | **11%** |
| Sugars 2g | |
| **Protein** 2g | |

| | |
|---|---|
| Vitamin A 0% | Vitamin C 0% |
| Calcium 0% | Iron 2% |
| Thiamin 4% | Riboflavin 2% |
| Niacin 2% | Vitamin B6 4% |
| Phosphorus 6% | Magnesium 6% |
| Zinc 2% | |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat 9 • Carbohydrate 4 • Protein 4

Packaging for "All Natural" SunChips 6 Grain Medley Creamy Roasted Garlic Flavored Multigrain Snacks:





**Ingredients:** Whole Corn, Sunflower and/or Canola Oil, Whole Wheat, Whole Oat Flour, Creamy Roasted Garlic Seasoning (Salt, Skim Milk, Maltodextrin [Made From Corn], Cheddar Cheese [Milk, Cheese Cultures, Salt, Enzymes], Onion Powder, Dried Garlic, Natural Flavors, Whey Protein Concentrate, Extra Virgin Olive Oil, Whey, Canola Oil, Romano Cheese [Cow's Milk, Cheese Cultures, Salt, Enzymes], Buttermilk, Lactose, Spice, Sunflower Oil, Citric Acid, Yeast Extract, Sugar, Milk Protein Concentrate, Lactic Acid, Parmesan Cheese [Milk, Cheese Cultures, Salt, Enzymes]), Whole Brown Rice Flour, Whole Buckwheat Flour, Whole Quinoa Flour, and Sugar.
**CONTAINS WHEAT AND MILK INGREDIENTS.**

## Nutrition Facts
Serving Size 1 oz (28g/About 15 chips)

| Amount Per Serving | |
|---|---|
| **Calories** 140 | Calories from Fat 60 |

| | % Daily Value* |
|---|---|
| **Total Fat** 6g | **10%** |
| Saturated Fat 1g | **4%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 1g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 150mg | **6%** |
| **Total Carbohydrate** 18g | **6%** |
| Dietary Fiber 3g | **10%** |
| Sugars 2g | |
| **Protein** 3g | |

| | | | |
|---|---|---|---|
| Vitamin A 0% | • | Vitamin C | 0% |
| Calcium 0% | • | Iron | 2% |
| Vitamin E 6% | • | Thiamin | 4% |
| Riboflavin 2% | • | Niacin | 4% |
| Vitamin B6 4% | • | Phosphorus | 6% |
| Magnesium 6% | • | Zinc | 2% |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | | Calories: | 2,000 | 2,500 |
|---|---|---|---|---|
| Total Fat | Less than | | 65g | 80g |
| Sat Fat | Less than | | 20g | 25g |
| Cholesterol | Less than | | 300mg | 300mg |
| Sodium | Less than | | 2,400mg | 2,400mg |
| Total Carbohydrate | | | 300g | 375g |
| Dietary Fiber | | | 25g | 30g |

Calories per gram:
Fat 9  •  Carbohydrate 4  •  Protein 4

Packaging for "All Natural" SunChips Original Multigrain Snacks:





**Ingredients:** Whole Corn, Sunflower and/or Canola Oil, Whole Wheat, Whole Oat Flour, Rice Flour, Sugar, Corn Bran, Salt, Natural Flavor, and Maltodextrin (Made from Corn).
**CONTAINS A WHEAT INGREDIENT.**

No Preservatives.

## Nutrition Facts
Serving Size 1 oz (28g/About 16 chips)

| Amount Per Serving | |
|---|---|
| **Calories** 140 | Calories from Fat 50 |

| | % Daily Value* |
|---|---|
| **Total Fat** 6g | **10%** |
| Saturated Fat 1g | **5%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 1g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 120mg | **5%** |
| **Total Carbohydrate** 19g | **6%** |
| Dietary Fiber 3g | **10%** |
| Sugars 2g | |
| **Protein** 2g | |

| | | | |
|---|---|---|---|
| Vitamin A 0% | • | Vitamin C | 0% |
| Calcium 0% | • | Iron | 2% |
| Vitamin E 6% | • | Thiamin | 2% |
| Niacin 2% | • | Vitamin B6 | 2% |
| Phosphorus 4% | • | Magnesium | 4% |
| Zinc 2% | | | |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | | Calories: | 2,000 | 2,500 |
|---|---|---|---|---|
| Total Fat | Less than | | 65g | 80g |
| Sat Fat | Less than | | 20g | 25g |
| Cholesterol | Less than | | 300mg | 300mg |
| Sodium | Less than | | 2,400mg | 2,400mg |
| Total Carbohydrate | | | 300g | 375g |
| Dietary Fiber | | | 25g | 30g |

Calories per gram:
Fat 9  •  Carbohydrate 4  •  Protein 4

- 14 -

Packaging for "All Natural" SunChips Harvest Cheddar Multigrain Snacks:





HARVEST CHEDDAR

INGREDIENTS: Whole Corn, Sunflower and/or Canola Oil, Whole Wheat, Whole Oat Flour, Rice Flour, Sugar, Corn Bran, Maltodextrin (Made From Corn), Salt, Cheddar Cheese (Milk, Cheese Cultures, Salt, Enzymes), Natural Flavors, Whey, Whey Protein Concentrate, Onion Powder, Romano Cheese (Cow's Milk, Cheese Cultures, Salt, Enzymes), Buttermilk, Yeast Extract, Citric Acid, Paprika Extracts, Lactic Acid, Garlic Powder, Parmesan Cheese (Milk, Cheese Cultures, Salt, Enzymes), and Skim Milk. CONTAINS WHEAT AND MILK INGREDIENTS.

## Nutrition Facts
Serving Size 1 oz. (28g/About 15 chips)

**Amount Per Serving**

| Calories 140 | Calories from Fat 60 |
|---|---|

| | % Daily Value* |
|---|---|
| **Total Fat** 6g | **10%** |
| Saturated Fat 1g | **4%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 1g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 200mg | **8%** |
| **Potassium** 70mg | **2%** |
| **Total Carbohydrate** 19g | **6%** |
| Dietary Fiber 3g | **10%** |
| Sugars 2g | |
| **Protein** 2g | |

| Vitamin A 0% | • | Vitamin C 0% |
|---|---|---|
| Calcium 0% | • | Iron 2% |
| Vitamin E 6% | • | Thiamin 2% |
| Riboflavin 2% | • | Niacin 2% |
| Vitamin B6 4% | • | Phosphorus 6% |
| Magnesium 4% | • | Zinc 2% |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat 9  •  Carbohydrate 4  •  Protein 4

Packaging for "All Natural" SunChips French Onion Multigrain Snacks:





FRENCH ONION

INGREDIENTS: Whole Corn, Sunflower and/or Canola Oil, Whole Wheat, Whole Oat Flour, Rice Flour, Sugar, Corn Bran, Whey Protein Concentrate, Salt, Buttermilk, Whey, Onion Powder, Sour Cream (Cream, Skim Milk, Cultures), Natural Flavors, Gum Acacia, Skim Milk, Mozzarella Cheese (Milk, Cheese Cultures, Salt, Enzymes), Yeast Extract, Spices (Including Parsley), and Maltodextrin (Made From Corn). CONTAINS WHEAT AND MILK INGREDIENTS.

## Nutrition Facts
Serving Size 1 oz. (28g/About 15 chips)

**Amount Per Serving**

| Calories 140 | Calories from Fat 60 |
|---|---|

| | % Daily Value* |
|---|---|
| **Total Fat** 6g | **10%** |
| Saturated Fat 1g | **8%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 1g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 150mg | **6%** |
| **Potassium** 75mg | **2%** |
| **Total Carbohydrate** 18g | **6%** |
| Dietary Fiber 3g | **10%** |
| Sugars 3g | |
| **Protein** 2g | |

| Vitamin A 0% | • | Vitamin C 0% |
|---|---|---|
| Calcium 0% | • | Iron 2% |
| Vitamin E 6% | • | Thiamin 2% |
| Niacin 2% | • | Vitamin B6 4% |
| Phosphorus 6% | • | Magnesium 4% |
| Zinc 2% | | |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat 9  •  Carbohydrate 4  •  Protein 4

Packaging for "All Natural" SunChips Garden Salsa Multigrain Snacks:





## Nutrition Facts

Serving Size 1 oz. (28g/About 15 chips)

**Amount Per Serving**

| | | |
|---|---|---|
| **Calories** 140 | | Calories from Fat 60 |

| | % Daily Value* |
|---|---|
| **Total Fat** 6g | **9%** |
| Saturated Fat 1g | **5%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 1.5g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 140mg | **6%** |
| **Potassium** 70mg | **2%** |
| **Total Carbohydrate** 19g | **6%** |
| Dietary Fiber 3g | **10%** |
| Sugars 2g | |
| **Protein** 2g | |

| | | | |
|---|---|---|---|
| Vitamin A 0% | • | Vitamin C 0% |
| Calcium 0% | • | Iron 2% |
| Vitamin E 6% | • | Thiamin 2% |
| Riboflavin 2% | • | Niacin 2% |
| Vitamin B6 4% | • | Phosphorus 6% |
| Magnesium 4% | • | Zinc 2% |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat 9   •   Carbohydrate 4   •   Protein 4

**INGREDIENTS:** Whole Corn, Sunflower and/or Canola Oil, Whole Wheat, Whole Oat Flour, Rice Flour, Sugar, Corn Bran, Tomato Powder, Salt, Natural Flavors, Maltodextrin (Made From Corn), Cheddar Cheese (Milk, Cheese Cultures, Salt, Enzymes), Dextrose, Buttermilk, Onion Powder, Whey, Yeast Extract, Romano Cheese (Part Skim Cow's Milk, Cheese Cultures, Salt, Enzymes), Whey Protein Concentrate, Corn Oil, Spices (Including Jalapeño Pepper), Citric Acid, Paprika Extracts, and Lactic Acid. **CONTAINS WHEAT AND MILK INGREDIENTS.**

Packaging for "All Natural" Tostitos Restaurant Style Tortilla Chips:



Packaging for "All Natural" Tostitos Bite Size Rounds Tortilla Chips:



Packaging for "All Natural" Tostitos Crispy Rounds Tortilla Chips:



Packaging for "All Natural" Tostitos Scoops Tortilla Chips:



Packaging for "All Natural" Tostitos Hint of Lime Tortilla Chips:



33.     The large "all natural" stamp is featured prominently on the front of the chips bags, less than one-inch to the left or right of, and level with, the product's brand-name. This prime placement of the "all natural" stamp on the SunChips and Tostitos bags reinforces the significance to consumers of Defendants' "all natural" claim. Defendants have explained that the location of the stamp on the SunChips and Tostitos bags enables consumers to "easily identify" their "all natural" products. *See* http://www.fritolay.com/your-health/naturally-delicious.html (last visited Feb. 20, 2013).

34.     In addition to the representations appearing on the Products' packaging and advertising, there is a page called "Naturally Delicious" on Defendant Frito-Lay's website under the "Your Health" tab, explaining what the "all natural" stamp means and listing Defendants' products that feature these representations. The webpage states, in pertinent part:

> We're proud to make so many of the Frito-Lay snacks you love with all natural ingredients. We believe that real flavor comes straight from nature.
>
> [...]
>
> **Natural FAQs**
>
> 1.  Q: What does it mean when a product is made with all natural ingredients?
>
> A: ***All Frito-Lay snack chips made with natural ingredients start with all-natural corn*** or potatoes and healthier oils.
>
> [...]
>
> 2.  Q: Why do we offer products made with all natural ingredients?
>
> A: ***We know people are increasingly looking for snacks made with natural ingredients.***
>
> [...]

- 19 -

> 4. Q: Where can I find Frito-Lay products made with natural ingredients?
>
> A: You can find all natural Frito-Lay products in the regular chip aisle. To easily identify our products made with all natural ingredients, look for the all natural stamp.
>
> 5. Q: Which Frito-Lay products are now made with natural ingredients?
>
> A: Our original potato chips and tortilla chips have actually always been all natural; they are made with just three simple ingredients—potatoes or corn, oil and salt. Now many of your favorite flavored products are made with natural ingredients, too, such as LAY'S® Potato Chips, TOSTITOS® Tortilla Chips and SUNCHIPS® Multigrain Snacks. For a full list of Frito-Lay natural products, please see the list below.

http://www.fritolay.com/your-health/naturally-delicious.html (last visited Feb. 20, 2013)

(emphasis added). In reality, each of the "all natural" Products identified in this Complaint is far from "simple" because at least one of these "simple ingredients"—corn—contains GMOs.

35.     By consistently and systematically marketing and advertising the Products as "all natural" on the Products' packaging and otherwise throughout Minnesota and the U.S., Defendants ensured that all consumers purchasing the Products would be, and all consumers purchasing the Products—including Plaintiff—were, exposed to Defendants' misrepresentation that the Products are "all natural."

**B.     GMOs Are Not Natural**

36.     GMOs are not natural. As more fully alleged below, "unnatural" is a defining characteristic of genetically modified foods.

37.     As of January 2010, Monsanto was the world's dominant producer of genetically modified seeds; 80% of the U.S. corn crop is grown with seeds containing Monsanto's technology. *See* Robert Langreth and Bruce Herper, *The Planet Versus Monsanto*, Forbes, Jan. 18, 2010, http://www.forbes.com/forbes/2010/0118/americas-best-company-10-gmos-dupont-

planet-versus-monsanto.html. Monsanto defines GMOs as "Plants or animals that *have had their genetic makeup altered to exhibit traits that are not naturally theirs*. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." Monsanto Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited Feb. 20, 2013) (emphasis added).

38.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, defines GMOs as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance. Seed harvested from genetically modified plants will also contain these modifications." Romer Labs, http://www.romerlabs.com/en/knowledge/gmo/ (last visited Feb. 20, 2013) (emphasis added).

39.     That GMOs are not natural is further evidenced by the explanations of health and environmental organizations, such as the World Health Organization, which defines GMOs as "organisms in which the genetic material (DNA) *has been altered in a way that does not occur naturally*." World Health Organization, *20 Questions on Genetically Modified (GM) Foods*, http://www.who.int/foodsafety/publications/biotech/20questions/en (last visited Feb. 20, 2013) (emphasis added).

40.     The Environmental Protection Agency has distinguished conventional, "natural" breeding of plants from genetic engineering using modern scientific techniques:

> What is the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding?
>
> Conventional breeding is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as

cross-pollination. For a plant-incorporated pesticide, one would breed a plant that produces a pesticide with a sexually compatible plant that does not possess this property but possesses other properties of interest to the breeder, e.g., sweeter fruit. Then, out of the offspring, the breeder would choose the offspring plant that produces the pesticide, and therefore expresses the desired pesticidal trait, as well as producing sweeter fruit.

Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material. For example, a desired gene that produces a desired pesticides (e.g., the insecticidal protein Bt from the bacterium, Bacillus thuringiensis) can be isolated from another organism, such as a bacterium, and then inserted into a plant. The desired gene becomes part of the plant's DNA. The plant then expresses the incorporated gene and produces the pesticidal protein as it would one of its own components.

United States Environmental Protection Agency, Prevention, Pesticides And Toxic Substances,

*Questions & Answers Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants*

*(PIPs) Rules* (July 19, 2001), http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf.

41.     Genetic engineering is not just an extension of conventional breeding—in fact, it

differs profoundly:

As a general rule, conventional breeding develops new plant varieties by the process of selection, and seeks to achieve expression of genetic material which is already present within a species. . . . Conventional breeding employs processes that occur in nature, such as sexual and asexual reproduction. . . . The product of conventional breeding emphasizes certain characteristics. However these characteristics are not new for the species. The characteristics have been present for millennia within the genetic potential of the species.

Genetic engineering works primarily through insertion of genetic material, although gene insertion must also be followed up by selection. *This insertion process does not occur in nature.*

Michael K. Hansen, Ph.D., Consumer Policy Institute/Consumer Union, *Genetic Engineering Is*

*Not An Extension of Conventional Plant Breeding: How Genetic Engineering Differs From*

- 22 -

*Conventional Breeding, Hybridization, Wide Crosses and Horizontal Gene Transfer*, *available at* http://www.consumersunion.org/food/widecpi200.htm (last visited Feb. 20, 2013) (emphasis added).

42.     Natural breeding can occur only between closely related life forms—*e.g.*, wheat with wheat or soy with soy. Natural breeding techniques cannot add the genes of a different organism—*e.g.*, adding fish genes to a wheat seed. Instead, to add genes of an organism to a different organism, scientists must use genetic engineering, producing an organism which could not otherwise exist in nature. Thus, natural corn, oats, soy, and other plants could not include the genes of a virus or bacteria, unless the plant DNA was altered through genetic modification.

43.     Moreover, genetically modified plants are fundamentally different from naturally existing plants because inserting foreign genes into plant DNA alters the original genes, just as inserting a new letter can alter the meaning of a word. Foreign genes reduce or increase the plant gene's function, sometimes blocking its expression altogether. These unexpected consequences can yield alterations in the nutritional content of the food, toxic and allergenic effects, poor crop performance, and generations of environmental damage.

44.     As indicated by the definitions and descriptions above, which come from a wide array of industry, government and health organizations, GMOs are not "all natural." GMOs are "created" artificially in a laboratory through genetic engineering.

45.     Furthermore, GMOs are not "natural" under federal definition. Although the Food and Drug Administration ("FDA") does not directly regulate the term "natural," the FDA has established a policy outlining the outer boundaries of the use of the term "natural." According to the FDA, at the very least, a product is not natural if it contains synthetic or artificial ingredients. FDA Consumer Health Information, *Food Label Helps Consumers Make Healthier Choices*,

at 2, *available at* http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/

UCM199361.pdf. Specifically, the FDA states:

> the agency will maintain its policy (Ref. 32) regarding the use of
> "natural," as meaning that nothing artificial or synthetic (including
> all color additives regardless of source) has been included in, or
> has been added to, a food that would not normally be expected to
> be in the food."

58 Fed. Reg. 2302, 2407 (Jan. 6, 2003). In addition, the federal government has defined the term

"synthetic" to mean:

> a substance that is formulated or manufactured by a chemical
> process or by a process that chemically changes a substance
> extracted from naturally occurring plant, animal, or mineral
> sources, except that such term shall not apply to substances created
> by naturally occurring biological processes.

7 U.S.C. § 6502(21); 7 C.F.R. § 205.2. Similarly, the USDA's Food Safety and Inspection

Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or

synthetic ingredient. USDA FSIS, Food Standards and Labeling Policy Book, *available at*

http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf. These

artificial, manmade plants are "synthetic" under federal definition, as they were "formulated or

manufactured by a chemical process or by a process that chemically changes a substance," and

were certainly not manufactured by a "naturally occurring biological process." *See* 7 C.F.R.

§ 205.2; 7 U.S.C. § 6502(21). GMOs are therefore not "all natural."

46.    GMOs have created controversy around the world due to concerns about food

safety, the effect on natural ecosystems, gene flow (a/k/a "gene migration" or "genetic drift")

into non-GMO crops, and other issues.

47.    One consumer response to such concerns has been to purchase products

represented as "natural" rather than food products that are derived from GMOs.

- 24 -

48.     In accordance with expert definitions and common sense, reasonable consumers reasonably understand that GMOs, and ingredients derived from GMOs, are *not* natural.

49.     Indeed, surveys show that a majority of consumers believe that the term "natural" implies the absence of genetically modified ingredients. *See* Canada Organic Trade Association, *Consumer Confusion About the Difference: "Natural" and "Organic" Product Claims*, at 6 (2010), *available at* http://www.ocpro.ca/docs/Library/White%20Paper%20Nat-Org%20COTA.pdf (citing The Hartman Group, *Beyond Organic and Natural* (2010), *available at* http://www.hartman-group.com/publications/reports/beyond-organic-and-natural)).

50.     According to Consumers Union, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients." Notice of the Federal Trade Commission, *Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims*, 16 CFR § 260, Dec. 10, 2010, *available at* http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf.

51.     Thus, by claiming the Products are "all natural," Defendants deceive and mislead reasonable consumers.

**C.     SunChips And Tostitos Are Made From GMOs**

52.     Upon information and belief, the Products contain GMOs, and have contained GMOs at all times relevant to this Complaint.

53.     Tests conducted by an independent laboratory on samples of Defendants' "all natural" Tostitos and SunChips have confirmed the presence of GMOs.

54.     Defendants know, and at all relevant times to this Complaint have known, or have so recklessly avoided the truth such that knowledge can be imputed, that the Products contain GMOs.

55.     Despite the labeling of their Products as "all natural," Defendants failed to disclose to consumers that the Products contained GMOs.

**D.      Defendants Deceptively Market the Products as "All Natural" to Induce Consumers to Purchase the Products**

56.     Consumers frequently rely on food label representations and information in making purchase decisions.

57.     A representation that a product is "all natural" is material to a reasonable consumer.

58.     A "natural" claim on a product label is very likely to be important to consumers. A "natural" claim on a product label is more likely to be either "important" or "very important" to consumers than an "organic" claim, a "GMO-free" claim, or a "sustainably-produced" claim. *See* Context Marketing, *Beyond Organic: How Evolving Consumer Concerns Influence Food Purchases* (2009), *available at* http://www.contextmarketing.com/foodissuesreport.pdf.

59.     Nearly seven in ten consumers surveyed by researcher Mintel said they were "very" or "somewhat" interested in natural products; in surveys by Brand Keys consultancy, "natural ingredients" ranked second only to "taste" in influencing consumer purchasing behavior. Bruce Horovitz, *Frito-Lay Turns to Nature's Path*, USA Today, Dec. 28, 2010, *available at* http://www.usatoday.com/printedition/news/20101228/fritonatural28_st.art.htm.

60.     The labeling of products as "all natural" carries implicit health benefits important to consumers—benefits that consumers are often willing to pay a premium for over comparable products that are not all natural.

61.     Defendants are well-aware that claims of food being "all natural" are material to consumers. Defendants market and advertise the Products as "all natural" to increase the sales of the Products.

62.     John Compton, CEO of PepsiCo Americas Foods, acknowledged the importance

of "all natural" labels to consumers:

> Let me first start with this decision to the Frito-Lay [move] to all
> natural. *Consumers have consistently told us they are looking for
> more whole grains, and more all natural snacks. And they are
> voting with their wallets.* If you look at the total food and beverage
> growth in the United States, it's growing around 2% to 3%. And
> the all-natural segment is growing almost 3 times faster than the
> total.
>
> [...]
>
> *We have talked extensively to consumers about this idea, and
> they come back and tell us the number one motivation for
> purchase is products that claim to be all natural.* And the
> purchase intent went up for heavy users, medium users, and
> importantly, light users who tend to come and go from the
> category.

Final Transcript, Thomson StreetEvents: PEP – PepsiCo at Morgan Stanley Consumer & Retail

Conference, Nov. 17, 2010, *available at* http://www.pepsico.com/Download/PEP-Transcript-

2010-11-17.pdf (emphasis added).

63.     According to Frito-Lay's Chief Marketing Officer, Ann Mukherjee, as quoted in

USA Today: "'Consumers tell us they're looking for better choices in their snacking

options. . . .' At the top of the list, she says, are snacks made with natural ingredients." Bruce

Horovitz, *Frito-Lay Turns to Nature's Path*, USA Today, Dec. 28, 2010, *available at*

http://www.usatoday.com/printedition/news/20101228/fritonatural28_st.art.htm.

64.     Such materiality is evidenced by Defendants marketing the Products as "all

natural" at all relevant times to this Complaint in nearly every media format, and on the front of

all bags of SunChips and Tostitos.

65.     Defendants acknowledge on their website:

Q: Why do we offer products made with all natural ingredients?

- 27 -

> A: *We know people are increasingly looking for snacks made with natural ingredients.*

http://www.fritolay.com/your-health/naturally-delicious.html (last visited Feb. 20, 2013)

(emphasis added).

66.     Defendants have repeatedly acknowledged that "consumers are seeking a wider range of products made with all natural ingredients." Defendants have made their "all natural" products "easily identifiable in stores with a stamp on the package that calls out that the product is made with all natural ingredients." *See* Frito-Lay Press Release, Apr. 11, 2011, http://www.fritolay.com/about-us/press-release-20110411.html.

67.     To support the transformation to "all natural" products, Defendants undertook "the largest integrated marketing campaign in the history of the company." *See* Frito-Lay Press Release, Dec. 28, 2010, http://www.fritolay.com/about-us/press-release-20101228.html.

**E.     Plaintiff Was Damaged**

68.     Plaintiff was injured in fact as a result of Defendants' misleading and deceptive misrepresentations.

69.     Plaintiff purchased the Products because Plaintiff believed, and reasonably relied upon, Defendants' representations that the Products were "all natural." Plaintiff would not have purchased the Products had he known that the Products were not "all natural" because they contained GMOs.

70.     Plaintiff paid for "all natural" food products but received products that were not all natural. The products Plaintiff received were worth less than the products for which he paid.

71.     Based on Defendants' misleading and deceptive misrepresentations, Defendants were able to and did charge a premium price for the Products over the costs of competitive products not bearing an "all natural" label.

- 28 -

72.     Plaintiff paid these premium prices because Plaintiff reasonably believed Defendants' representations that the Products were "all natural." Plaintiff would not have purchased the Products had he known that the Products were not "all natural" because they contained GMOs.

73.     On each occasion that Plaintiff purchased one of the falsely labeled food Products, Plaintiff saw the Product's package and thus also saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed as detailed above.

74.     Plaintiff was further deceived and misled by Defendants' failure to disclose the above-listed material facts. Defendants' misleading affirmative statements further obscured what Defendants failed to disclose.

75.     Defendants made the false, deceptive, and misleading representations and omissions with the intent to induce Plaintiff and reasonable consumers to rely upon these representations and omissions in purchasing and ingesting the falsely labeled products.

76.     Plaintiff was among the intended recipients of Defendants' deceptive representations and omissions.

77.     Plaintiff reasonably relied to his detriment on Defendants' misleading representations and omissions.

78.     Defendants' false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiff, reasonable consumers, and the general public.

79.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act

upon such information in making purchase decisions. The materiality of those representations and omissions establishes causation between Defendants' conduct and the injuries sustained by Plaintiff as a matter of law.

80.     In making the false, misleading, and deceptive representations and omissions, Defendants knew and intended that consumers would pay a premium for "all natural" products over comparable products that are not "all natural," furthering Defendants' private interest of increasing sales for its Products and decreasing the sales of the all-natural products that are truthfully offered by Defendants' competitors.

## FIRST CLAIM FOR RELIEF
### Common Law Fraud

81.     Plaintiff incorporates and realleges the above paragraphs.

82.     Defendants' packaging labels for the Products uniformly misrepresented at all relevant times that the Products were "all natural," when in fact they contained a genetically modified ingredient, specifically genetically modified corn as identified in this Complaint.

83.     While the Products' packaging labels did uniformly disclose that the "all natural" food products contained corn, the label uniformly did not disclose that this ingredient was genetically modified, or disclose generally that the product contained ingredients that were genetically modified.

84.     Thus, the claims on the Products' labels that the food products were "all natural," as identified in this Complaint, constitute affirmative acts of concealment and non-disclosure since the corn used in the Products is a GMO ingredient. Defendants had a duty to disclose this material information in light of their representation on their labels that the Products were "all natural."

- 30 -

85.     Defendants' "all natural" statements and representations and its affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable purchaser of its food products would have considered them important when deciding whether or not to purchase its food products. A reasonable person would attach importance to the existence or nonexistence of these representations in determining whether to purchase the Products.

86.     Defendants knew or recklessly disregarded that the Products were not "all natural," and uniformly misrepresented the Products as "all natural" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers, including Plaintiff, to purchase the Products.

87.     Defendants misrepresented, failed to disclose, and/or concealed the foregoing material facts from consumers, including Plaintiff, knowing that these facts may have justifiably induced them to refrain from purchasing the Products and to instead purchase another manufacturer's products that were actually all natural, or to purchase a less expensive non-natural substitute product.

88.     Defendants intentionally made the false representations and intentionally suppressed and concealed these material facts with the intent to defraud consumers, including Plaintiff. Defendants made these false representations and omissions to make the Products appear more attractive to consumers. Defendants knew and intended that Plaintiff would rely on Defendants' representations and omissions and purchase the falsely-labeled Products.

89.     Defendants were under a duty to disclose the omitted facts because (1) Defendants had a duty to correct the misinformation Defendants disseminated through the packaging, marketing, advertising, and other promotion of the Products; and (2) Defendants were

- 31 -

in possession of knowledge about the identity, formulation, and production of the Products and of their ingredients, and this information was not reasonably available to consumers like Plaintiff.

90.     By not disclosing the material facts to Plaintiff, Defendants breached this duty.

91.     As set forth in this Complaint, Plaintiff reasonably and justifiably relied upon the Defendants' false representations and misleading omissions as a material basis for his decision to purchase the Products, including the SunChips 6 Grain Medley Parmesan & Herb Multigrain Snacks food product. Plaintiff was unaware of the truth of these misrepresentations and these concealed facts and would not have acted as he did if he had known the truth.

92.     Defendants gained an advantage by these fraudulent representations and omissions.

93.     As a direct and proximate result of the foregoing, Plaintiff has been injured by purchasing food products represented to be "all natural" which were not, and/or by paying a premium for those supposedly "all natural" food products over less expensive non-natural alternatives. Plaintiff is therefore entitled to recover damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

94.     Plaintiff is informed and believes, and upon such information and belief alleges, that Defendants undertook the aforesaid acts intentionally or with deliberate disregard of the rights of Plaintiff, and did so with fraud, oppression, and malice. Therefore, Plaintiff is also entitled to punitive damages against Defendants.

## SECOND CLAIM FOR RELIEF
### Violations of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*

95.     Plaintiff incorporates and realleges the above paragraphs.

- 32 -

96.     The Minnesota Prevention of Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.68 *et seq.*, was enacted to protect the public at large from, among other things, the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." § 325F.69 subd. 1.

97.     The Products marketed and sold by Defendants were at all relevant times within the definition of "merchandise" under the MCFA, Minn. Stat. § 325F.68 subd. 2.

98.     Defendants' wrongful acts, as set forth throughout this Complaint, constitute consumer fraud, false pretense, false promise, misleading statement, deceptive practice, misrepresentation and/or concealment, suppression or omission of material facts with the intent that consumers will rely thereon in violation of the MCFA.

99.     Defendants' "all natural" claims on the label of its Products, as identified in this Complaint, constitute deception, false pretense, false promise, and misrepresentation in connection with the sale of their Products in that Defendants represented on the packaging of their Products that the Products were "all natural," when in fact the Products contained a GMO ingredient in the form of genetically modified corn, as identified in this Complaint.

100.    Defendants knowingly and willfully concealed, suppressed, and omitted the material fact that their Products contained a GMO ingredient, despite their representations to the contrary.

101.    As the producers of their food products, Defendants possess specialized knowledge regarding the sourcing, contents, and processing of their food products and ingredients. This information was not known by or reasonably available to the public. As a

result, Defendants knew, should have had reason to know, or deliberately or recklessly disregarded that their representations were false, misleading, and deceptive.

102. As set forth throughout this Complaint, Defendants' misrepresentations on the packaging of the Products were intended to, had the capacity to and did deceive Plaintiff into purchasing the Products, including the SunChips 6 Grain Medley Parmesan & Herb Multigrain Snacks food product.

103. Plaintiff's claim for relief is in the public interest. Defendants committed the unfair and deceptive acts described herein in the course of their business as part of a pattern and generalized course of conduct. Defendants' unfair and deceptive business acts and practices have affected, and continue to affect, a great many consumers. A grant of Plaintiff's requested relief would have a public benefit for the citizens of Minnesota.

104. As a direct and proximate result of the foregoing, Plaintiff has been injured by purchasing food products represented to be "all natural" which were not, and/or by paying a premium for those supposedly "all natural" food products over less expensive non-natural alternatives. Plaintiff is therefore entitled to injunctive relief, damages, costs, reasonable attorneys' fees, and other equitable relief as the Court may determine, in an amount to be determined at trial, pursuant to Minn. Stat. § 8.31 subd. 3a.

### THIRD CLAIM FOR RELIEF
### Violations of the Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67

105. Plaintiff hereby incorporates and realleges the above paragraphs.

106. The Minnesota False Statement in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67, was enacted to protect the public at large from publications, including "label[s]," containing "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." § 325F.67.

- 34 -

107.    Defendants directly or indirectly created, made, disseminated or placed before the public a packaging label for their Products which represented that the Products were "all natural."

108.    The statements on Defendants' labels for the Products identified in this Complaint are false and misleading. Defendants misrepresented that the Products were "all natural" when in fact they were otherwise due to the use of a GMO ingredient in the form of genetically modified corn, as identified in this Complaint.

109.    Defendants knowingly and willfully concealed, suppressed, and omitted the material fact that their Products contained a GMO ingredient, despite their representations to the contrary.

110.    As the producer of their food products, Defendants possess specialized knowledge regarding the sourcing, contents, and processing of their food products and ingredients. This information was not known by or available to the public. As a result, Defendants knew, should have had reason to know, or deliberately or recklessly disregarded that their representations were false, misleading, and deceptive.

111.    As set forth throughout this Complaint, Defendants' misrepresentations on the packaging of the Products was intended to, had the capacity to and did deceive Plaintiff into purchasing the Products, including the SunChips 6 Grain Medley Parmesan & Herb Multigrain Snacks food product.

112.    Plaintiff's claim for relief is in the public interest. Defendants committed the unfair and deceptive acts described herein in the course of their business as part of a pattern and generalized course of conduct. Defendants' unfair and deceptive business acts and practices have

affected, and continue to affect, a great many consumers. A grant of Plaintiff's requested relief would have a public benefit for the citizens of Minnesota.

113.    As a direct and proximate result of the foregoing, Plaintiff has been injured by purchasing food products represented to be "all natural" which were not, and/or by paying a premium for those supposedly "all natural" food products over less expensive non-natural alternatives. Plaintiff is therefore entitled to injunctive relief, damages, costs, reasonable attorneys' fees, and other equitable relief as the Court may determine, in an amount to be determined at trial, pursuant to Minn. Stat. § 8.31 subd. 3a.

## FOURTH CLAIM FOR RELIEF
### Quasi-Contract/Restitution/Unjust Enrichment

114.    Plaintiff incorporates and realleges the above paragraphs. Plaintiff pleads this Claim in the alternative.

115.    Defendants have been unjustly enriched at the expense of and to the detriment of Plaintiff by their wrongful acts and omissions as described herein.

116.    Defendants took monies from Plaintiff for Products promised to be "all natural," even though the Products they sold contained a GMO ingredient in the form of genetically modified corn, as identified in this Complaint.

117.    Defendants profited from their unlawful, unfair, misleading, and deceptive practices and labeling at the expense of Plaintiff, under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. Defendants' retention of funds paid by Plaintiff violates the fundamental common-law principles of justice, equity, and good conscience.

118.    Defendants, therefore, should be ordered, to the extent there is no remedy provided by law, to return any and all funds obtained from Plaintiff's overpayment.

- 36 -

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests judgment against the Defendants as follows:

119.    For a declaration that the GMO ingredient in the form of genetically modified corn as identified above is not "all natural," and that its inclusion in a food product renders the statement that the product is "all natural" false, deceptive, and misleading.

120.    For a judgment awarding Plaintiff compensatory and punitive damages arising from Defendants' wrongful and illegal conduct;

121.    For a judgment awarding restitution of the monies wrongfully obtained as a result of Defendants' wrongful and illegal conduct;

122.    For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

123.    For pre- and post-judgment interest at the legal rate;

124.    For an order enjoining Defendants from continuing to make the false, deceptive, and misleading statements and omissions set forth above;

125.    For an order enjoining Defendants from continuing to offer for sale any Products that contain any false, misleading, and/or deceptive or unsubstantiated statements and claims on their packaging and/or labels, including, without limitation, those statements and claims set forth above;

126.    For an order enjoining Defendants from marketing, producing, or selling Products that claim to be "all natural" when the product contains one or more GMO substances or ingredients including, without limitation, the ingredient identified above;

127.    For an order that Defendants immediately recall any and all units of the Products that contain any false, misleading, and/or deceptive or unsubstantiated statements and claims on their packaging and/or labels;

- 37 -

128.   For an order enjoining Defendants from continuing to use the packaging and labels that it presently uses for the Products; and

129.   For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial for any and all Counts for which a trial by jury is permitted by law.


Respectfully submitted,

DATED: 2/20/13

By: _____
Paul R. Hansmeier (MN Bar #387795)
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*Attorney for Plaintiff*

- 38 -

## VERIFICATION AND ACKNOWLEDGMENT

I have read this document. To the best of my knowledge, the information contained in the document is well grounded in fact and is warranted by existing law.

I have not been determined by any court in Minnesota, or any other State, to be a frivolous litigant or subject to an Order precluding me from serving and filing this document.

I am not serving or filing this document for any improper purpose.

The undersigned hereby acknowledge that pursuant to Minn. Stat. 549.211, monetary and other sanctions may be imposed if the Court should find that the undersigned has violated Minn. Stat. 549.211, Subd. 2, by presenting a position which is unwarranted or for an improper purpose, as more fully defined in that statute.

DATED: 2/20/13

By: _Paul Hansmeier_

Paul R. Hansmeier (MN Bar #387795)

- 39 -

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

|  |  |
|---|---|
| ALLAN MOONEY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FRITO-LAY, INC. and PEPSICO, INC., | ) ) |
| Defendants. | ) ) ) ) ) ) |

Court File No.: _____

Case Type:    14. (Other Civil –
Consumer Protection)

## **BINDING STIPULATION**

Plaintiff Allan Mooney hereby stipulates and declares that he will not seek or accept any recovery in excess of the sum total of $75,000.00 on his own behalf in the above-captioned matter, fully inclusive of compensatory and punitive damages, restitution, attorneys' fees, and/or the value of any personal benefit actually realized from the grant of any declaratory, injunctive, or other equitable relief.

DATED: 2/20/13

By: _____

Paul R. Hansmeier (MN Bar #387795)
*Attorney for Plaintiff Allan Mooney*

- 40 -